IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN J. HOWE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-24-0653 |
| WEXFORD HEALTH SOURCES, et al., | * | |
| Defendants. | * | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Wexford Health Sources, Inc.'s ("Wexford") Motion to Dismiss (ECF No. 34) and Defendant CHS TX, Inc.'s ("CHS") Motion to Dismiss (ECF No. 39). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motions in part and deny them in part.

## I.   BACKGROUND[1]

The Court previously summarized the relevant facts in its Memorandum Opinion, which it will reproduce here:

> In 2013, Plaintiff Stephen Howe was sentenced to 20 years of incarceration. (Compl. ¶ 11, ECF No. 2). He began serving his sentence at the Eastern Correctional Institution in Westover, Maryland ("ECI"). (Id.). Although Howe entered prison as a healthy 19-year-old, his health began declining just a few years later. (Id. ¶¶ 12, 15).

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 30) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

1

In 2017, Howe began having headaches, dizziness, and changes in his vision. (Id. at ¶15). He reported these symptoms to Wexford Health Sources, the inmate medical healthcare services provider for the Department of Corrections. (Id.). He reported these issues to Amanda Morris, RN; Tracey L. Hall, RN; Paul Matera, MD; Charlotte Townley, RN; Stephanie Cyran, NP; Ruth Pinkney, PA; Binta Bojang, CRNP; Becky Harley, RN; Clayton Raab, MD; and Ruth Campbell, PA, among others. (Id. ¶ 16).

After the headaches, dizziness, and changes in vision continued for months, in October 2017, Ruth Pinkney, a Physician Assistant at ECI, ordered a cervical-spine x-ray. (Id. ¶ 17). Despite Pinkey's order, no x-ray was ever performed. (Id. ¶ 18). A few months later, Howe had a chronic care visit and reported that he still had headaches and dizziness (Id. ¶ 19). At that point, Stephanie Cyran, a Nurse Practitioner with Wexford, ordered a front and lateral chest x-ray, but Howe's medical records indicate this x-ray was never performed. (Id. ¶¶ 21–23).

Over the next four years, some version of this scenario repeated: Howe reported the same symptoms to different medical providers; those medical providers failed to order any testing; and his health worsened. (Id. ¶¶ 24–37, 45–46). Howe reported his worsening neurological symptoms to medical providers "at least twenty separate times over the course of nearly four years." (Id. ¶ 45). Howe's symptoms became so persistent he had "gotten used to" it. (Id. ¶ 30).

Finally, on February 16, 2021, Howe had a chronic care visit with Dr. Clayton Raab, who performed a neurological work up and ordered an MRI and a neurology consult to take place after the MRI was completed. (Id. ¶¶ 40–42). Howe had the MRI performed on March 5, 2021, and the results showed that he had lesions on his brain that were consistent with Multiple Sclerosis ["MS"]. (Id. ¶ 44). Howe received a formal MS diagnosis on August 18, 2021. (Id. ¶ 53).

Following his March 2021 MRI, Howe did not receive treatment for his MS for over one year, "save for a handful of physical therapy appointments," which "is not an accepted treatment for MS." (Id. at 9, ¶¶ 55–56). All the while, Howe's

2

> symptoms got so bad that he could no longer walk. (Id. at ¶ 57). He also began having memory loss. (Id. at ¶ 54).
> . . .
> Howe was prescribed medication for his MS in June of 2022, almost five years after his symptoms first arose. (Id. ¶ 60). The medication did not improve his symptoms. (Id. ¶ 61–64). A neurologist suggested Howe try Ocrevus, an alternative drug therapy used to treat and manage MS, but no provider ever prescribed Ocrevus. (Id. ¶ 65).

(Nov. 19, 2024 Mem. Op. at 2–4, ECF No. 17). Howe brings similar claims but raises them against different Defendants. Wexford is the state-hired contractor that provided medical services to inmates in the custody of the Department of Corrections before January 1, 2019. (Am. Compl. ¶ 4, ECF 30). CHS is the current state-hired contractor that has, since May 4, 2022, provided medical services to inmates in the custody of the Department of Corrections. (Id. ¶ 5).

### A. Procedural History

On May 30, 2024, Howe filed an Amended Complaint against Defendants Wexford and CHS. (ECF No. 30). The three-count Amended Complaint alleges violations of the Eighth Amendment to the United States Constitution under 42 U.S.C. § 1983 (Count I); a claim under Monell v. Department of Social Services of New York, 436 U.S. 658 (1978) (Count II); and violations of Articles 16 and 25 of the Maryland Declaration of Rights (Count III). (Am. Compl. ¶¶ 61–86). On July 17, 2024, Wexford filed a Motion to Dismiss. (ECF No. 34). On August 6, 2024, CHS filed a Motion to Dismiss. (ECF No 39). Howe opposed Wexford's Motion on July 31, 2024 (ECF No. 35), and opposed CHS' Motion on September 9, 2024 (ECF No. 43). Wexford filed a Reply on August 13, 2024. (ECF No. 40). To date, CHS has not filed a reply.

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. Standard of Review

In reviewing the Amended Complaint in light of a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6), the Court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to Howe. Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)); Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Migdal v. Rowe Price-Fleming Int'l Inc., 248 F.3d 321, 325–26 (4th Cir. 2001); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. Id. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 677–78 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

### 2. Analysis

#### i. 42 U.S.C. § 1983 (Count I)

In Count I, Howe alleges CHS and Wexford should be held liable because medical personnel knew of and disregarded a substantial risk of serious harm to his health. (Am. Compl. ¶¶ 61–73). For the reasons stated below, the Court will dismiss Count I.

Plaintiffs can establish an Eighth Amendment violation with respect to medical care if they can prove that there has been deliberate indifference to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for deliberate indifference has two parts. One, whether the deprivation of medical care was sufficiently serious (objective component) and second, whether there existed a culpable state of mind (subjective component). See Wilson v. Seiter, 501 U.S. 294, 298 (1991).

Howe fails to state a claim against Wexford and CHS because he grounds his claims on superior liability (Am. Compl. ¶¶ 61–73), which is not available under 42 U.S.C. § 1983. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 727–28 (4th Cir. 1999); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982). An entity like Wexford or CHS can be held liable "only for its own illegal acts," not simply because it employs a tortfeasor.

Owens v. Baltimore City State's Attorney's Office, 767 F.3d 379, 402 (4th Cir. 2014) (emphasis in original).

As this Court explained in dismissing Howe's § 1983 claim against prison officials, in the context of § 1983, "the term 'supervisory liability' is a misnomer." Iqbal, 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 676. In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 677. Liability is determined person by person: A plaintiff must show "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.; see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (finding no respondeat superior liability in a Bivens suit, rather "liability is personal, based upon each defendant's own constitutional violations").

The Court agrees with Wexford and CHS's observation that Howe seeks to hold Wexford and CHS vicariously liable in Count I for the alleged deliberate indifference of unnamed "prison medical healthcare providers" which is not available under § 1983. (Def.'s Mem. Supp. Mot. Dismiss Am. Compl. ["Wexford Mot."] at 7, ECF No. 34-1; Def.'s Mem. Supp. Mot. Dismiss Am. Compl. ["CHS Mot."] at 7, ECF No. 37-1).[2] Count I will accordingly be dismissed.

---

[2] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

### ii. Monell (Count II)

Howe next alleges a claim under Monell v. Department of Social Services of New York, 436 U.S. 658 (1978). (Am. Compl. ¶¶ 74–80). In Monell, the Supreme Court held that local governmental entities may be liable under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights. 436 U.S. at 690–91. The Monell Court explained that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." Id. at 694.

Of import here, Monell liability has been extended to private entities operating under color of state law, including private prison health care providers. See, e.g., Austin v. Paramount Parks, Inc., 195 F.3d 715, 729 (4th Cir. 1999). All Monell claims have three elements: "(1) identifying the specific 'policy' or 'custom'[;] (2) fairly attributing the policy and fault for its creation to the [private entity]; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation." Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987), cert. denied sub nom. City of Fayetteville v. Spell, 484 U.S. 1027 (1988). Where an entity lacks an expressed policy, a party pursuing the Monell claim may "point to a 'persistent and widespread practice of [officials]' the 'duration and frequency' of which indicate that policymakers 1) had actual or constructive knowledge of the conduct, and 2) failed to correct it due to their 'deliberate indifference.'" Owens, 767 F.3d at 402.

At this stage in the proceedings, Howe's Monell claim against Wexford and CHS survives. Howe alleges that "the prison medical healthcare providers maintained an official policy and/or custom of ignoring inmates health concerns, minimizing and delaying diagnostic testing for inmates with serious medical issues, and delaying treatment of diagnosed medical issues, to avoid the expense of providing necessary treatment to inmates suffering from debilitating health conditions." (Am. Compl. ¶ 76). He adds that "[t]his unconstitutional policy of ignoring, undertesting, underdiagnosing, and undertreating clear medical issues caused a violation of [Howe's] constitutional rights." (Id. ¶ 77). Accepting Howe's allegations as true, as this Court must, see Galante v. Ocwen Loan Servicing, LLC, No. ELH-13-1939, 2014 WL 3616354, at *7 (D.Md. July 18, 2014) (quoting Twombly, 550 U.S. at 5560), the Complaint adequately alleges that Wexford and CHS contracted with the Maryland Department of Corrections to provide medical treatment to inmates; that Wexford and CHS' policy or custom resulted in the deprivation of rights secured to Howe by the Eighth Amendment of the U.S. Constitution, and critically, that Wexford and CHS have implemented its unconstitutional policy or custom through those who provided direct care to Howe.

Defendants argue Howe fails to state a Monell claim for three main reasons. First, both Wexford and CHS dispute the existence of an official policy to delay treatment because to do so would be "exponentially more expensive," (Wexford Mot. at 15), and "[i]t is logical to assume that treating ailments early is a better cost saving measure," (CHS Mot. at 11). The Court rejects this argument because at issue at this stage is whether Howe has plausibly alleged the existence of a policy, not the motivations behind the policy. Second,

8

Wexford argues that Howe fails to allege facts showing that any individual Wexford employee was deliberately indifferent to his medical needs. (Id. at 17). But that is not dispositive. See Bost v.Wexford Health Sources, Inc., No. ELH-15-3278, 2017 WL 1862486, at *11–14 (D.Md. May 8, 2017) (recognizing that even if no individual defendant can be found liable under § 1983, that does not necessarily dispose of a Monell claim, especially in the prison medical care context). Third, both CHS and Wexford appear to fault Howe for not providing more specificity about the alleged policy or custom. (CHS Mot. at 10; Wexford Mot. at 15–18). Before discovery, however, Howe need not plead the policy with exacting particularity. Indeed, simply alleging a Monell claim is far easier than prevailing on the merits. Owens, 767 F.3d at 403. Other courts in this jurisdiction have recognized that at the motion to dismiss stage, "[i]n the context of Monell liability, it will often be the case that a plaintiff lacks specific details regarding the . . . internal policies . . . before discovery." Green v. Obsu, No. 19-2068, 2021 WL 165135, at *15 (D.Md. Jan. 19, 2021). In other words, "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork." Id. (quoting Estate of Osuna v. Cty. of Stanislaus, 392 F.Supp. 2d 1162, 1174 (E.D.Cal. 2019)). For all these reasons, the Court declines to dismiss Count II at this stage.[3]

---

[3] The Court rejects Wexford and CHS' argument that Howe's Monell claim is time-barred, (Wexford Mot. at 11; CHS Mot. at 15), because as Howe notes, "there are no facts in the complaint that demonstrate that the statute of limitations on Mr. Howe's Monell claim began to run at any time prior to March 8, 2021," the date of his official diagnosis. (Pl.'s Mem. L. Opp'n Wexford Mot. Dismiss at 5–6, ECF No. 35).

### iii. <u>Maryland Declaration of Rights (Count III)</u>

In Count III, Howe alleges that Wexford and CHS's acts and omissions deprived him of his rights under the Maryland Declaration of Rights, Articles 16 and 25, to be free from cruel and unusual punishment. (Am. Compl. ¶¶ 81–86). Both CHS and Wexford argue that private entities cannot be liable for a violation of the Maryland Declaration of Rights. (Wexford Mot. at 8; CHS Mot. at 16–17). At bottom, the Court agrees that CHS and Wexford cannot be held liable under Articles 16 and 25 for reasons explained below.

Like the Eighth Amendment, Articles 16 and 25 of the Maryland Declaration of Rights prohibit cruel and unusual punishment. <u>Robinson v. Pytlewsi</u>, No. PX 19-01025, 2020 WL 607030, at *5 (D.Md. Feb. 7, 2020). With respect to private entities, Maryland constitutional provisions "have the [ ] narrow focus of protecting citizens from certain unlawful acts committed by government officials." <u>DiPino v. Davis</u>, 354 Md. 18, 50–51 (1999) (emphasis added). Accordingly, although federal law provides a private cause of action where an individual's constitutional rights are violated by a party acting under the color of state law, Maryland law does not provide that same cause of action and only protects individuals from violations by government officials.

Here, both CHS and Wexford are not government officials, but rather private actors who are contracted to treat individuals incarcerated in prison. As a result, Howe has no claim against them under Maryland law. <u>See</u> <u>Estate of Jones v. NMS Health Care of Hyattsville, LLC</u>, 903 F.Supp. 2d 323, 328–329 (D.Md. 2012) (finding that defendant, which was a private entity and not a public official or government agent, could not be liable

for a violation of the Maryland Declaration of Rights). Howe's claim against Wexford and CHS as to Count III will accordingly be dismissed.

### III.  CONCLUSION

For the forgoing reasons, Wexford and CHS' Motions to Dismiss (ECF Nos. 34, 39) will be granted in part and denied in part. The Motions will be granted as to Howe's § 1983 claim (Count I) and Maryland Declaration of Rights claim (Count III). The Motions will be denied as to Howe's claim under Monell v. Department of Social Services of New York, 436 U.S. 658 (1978) (Count II). Defendants will answer the Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 19th day of November, 2024.

/s/
George L. Russell, III
Chief United States District Judge